UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                      Case No. 22-CR-55

JARON JAY JACKSON,

        Defendant.

---

### ORDER DENYING MOTION TO SUPPRESS

---

On March 1, 2022, a grand jury sitting in Milwaukee returned a nine-count indictment charging Jaron Jay Jackson with sex trafficking of two fifteen-year-old females (JV-1 and JV-2); prostitution of an adult female (AV-1); and producing, transporting, and possessing child pornography depicting JV-1 performing oral sex on Jackson. On May 31, 2023, well over a year later, the case came before the court on Jackson's motion to suppress the evidence obtained from his phone on the ground that the state unreasonably delayed in seeking a warrant to effectuate the search of the phone. Following argument by counsel, the court denied the motion on the record both because it was untimely and because it was clear that no violation of Jackson's constitutional rights occurred. This order will confirm that ruling.

The crimes alleged in the indictment all occurred prior to June 30, 2019, the date on which Milwaukee police officers arrested Jackson for absconding from state supervision after he disembarked from a Chicago-to-Milwaukee Amtrak train. At the time of his arrest, Jackson was on extended supervision and probation in two prior cases: Waukesha County case number 2007CF908 and Outagamie County case number 2016CM1234. In the prior felony case, Jackson

pled guilty to possession of cocaine with intent to distribute and was sentenced to prison in May 2009. He was released on extended supervision in May 2012 and was revoked in December 2015. He was again released on extended supervision in September 2016 and then absconded, which resulted in the October 2017 warrant.

Prior to his arrest for violation of his supervision, the Oshkosh Police Department (OPD) and the Wisconsin Division of Criminal Investigation (DCI) were jointly investigating Jackson for one or more of the crimes ultimately charged in the indictment. The OPD and DCI investigators learned that Jackson had left an Illinois hotel late that day bound for Milwaukee and alerted Milwaukee police, who arrested Jackson at the downtown Amtrak station. Jackson's iPhone 6 and other personal property were taken from him by police during the arrest, and Jackson has been in continuous custody since his arrest on June 30, 2019.

Wisconsin officials immediately instituted proceedings against Jackson to revoke his extended supervision and probation. The revocation hearing occurred on August 27, 2019, and included testimony from Oshkosh Police Department Detective Robertson, one of the two primary investigators in the OPD/DCI investigation. Jackson attended the revocation hearing, with counsel, but did not testify. Based on Detective Robertson's testimony, the Wisconsin Administrative Law Judge concluded the Jackson had violated conditions of his release by, inter alia, engaging in mouth to vagina sexual contact with JV-1, a fifteen-year-old minor female. The evidence for this violation had been obtained from JV-1's telephone, which contained a video of the offense. Jackson's extended supervision and probation were revoked, and he was ordered re-confined for a period of two years, seven months, and ten days. He has since served his revocation sentence and was transferred to federal custody on the above-described indictment.

2

In the meantime, OPD and DCI continued to investigate Jackson's conduct with underage females. On July 29, 2019, DCI retrieved Jackson's phone from the Milwaukee Police Department, where it had been logged into evidence following his arrest. On August 9, OPD Detective Robertson successfully applied for a warrant to search Jackson's phone. The warrant was then emailed to DCI's forensic examiner, who started the extraction process on August 12, 2019. The phone's unknown password and encryption initially prevented a full download. The examiner began what is called a "brute force" decryption using forensic software which ran continuously until May 17, 2021, resulting in a complete file system extraction. The evidence from Jackson's phone included hundreds of sex trafficking messages between Jackson and JV-1, JV-2, and AV-1; numerous messages, images, and videos related to online advertisements that Jackson posted to sex traffic the three females; billing and contact information for Jackson and the hotels that he used for sex trafficking; and child pornography videos taken by Jackson showing JV-1 performing oral sex on him. This and other evidence formed the basis for the current charges against Jackson.

On May 5, 2023, Jackson filed a motion to suppress the evidence seized from his phone on the ground that law enforcement unreasonably delayed in seeking a warrant to effectuate its search. Citing *United States v Burgard*, 675 F.3d 1029 (7th Cir. 2012), Jackson argues that the police waited too long before obtaining the warrant authorizing the search of his phone. The delay in seeking the warrant after seizure of his phone was forty days. In *Burgard*, the Seventh Circuit upheld a search that was conducted six days after the seizure of the phone. Although the Seventh Circuit upheld the search, it noted that "when officers failed to seek a search warrant, at some point the delay becomes unreasonable and is actionable under the Fourth Amendment." *Id*. at 1032. Given the substantially longer period of the delay between the seizure of his phone and the

application for the warrant in this case, Jackson argues that, under *Burgard*, the search was illegal and the evidence obtained therefrom should be suppressed.

The Government opposes Jackson's motion on two grounds. First, the Government argues that the motion is untimely and Jackson has failed to show good cause for his failure to file it in a timely manner. On that basis alone, the Government contends, his motion should be denied. Second, the Government argues that Jackson's motion should be denied on the merits because the delay in seeking a warrant did not violate Jackson's Fourth Amendment rights. The court will address each argument in turn.

**A. Timeliness**

There is no dispute that Jackson's motion was not timely filed. Jackson was arraigned on March 8, 2022, and upon Jackson's pleas of not guilty, trial was set for May 16, 2022, pursuant to the Speedy Trial Act, 18 U.S.C. § 3161. Dkt. No. 5. The court set March 23, 2022, as the deadline for filing pretrial motions. *Id.* The trial date was later vacated at the request of both parties, and the motion deadline was extended to July 1, 2022. When no motions were filed by that date, the court held a status conference on July 29, 2022. The parties advised the court that the case was likely to settle, thereby sparing the victims the ordeal of testifying, and asked for a status conference in 45 to 60 days. Dkt. No. 16. On September 23, 2022, counsel for Jackson asked for an additional 30 to 45 days so he could continue his discussions with Jackson concerning the proposed plea agreement. Dkt. No. 17.

On November 9, 2022, Jackson's attorney advised the court that Jackson wanted a new attorney and was requesting a hearing on the matter. Dkt. No. 18. At the hearing before the court on November 17, 2022, Jackson complained that he and his attorney were not seeing eye-to-eye. Dkt. No. 19. According to Jackson, his attorney did not believe there was merit in the motions he

4

wanted to file in the case. After listening to Jackson's description of the motions he wanted his attorney to file, the court explained that they had no merit and his attorney was duty bound to avoid filing motions that were without merit. Finding that there was no break-down in communication, the court denied Jackson's oral motion for a new attorney and set the case for trial to commence on March 6, 2023. *Id.*

On December 9, 2022, Jackson filed a Pro Se Motion for Appointment of New Counsel alleging a complete breakdown in communication. Dkt. No. 21. On December 18, 2022, Jackson's attorney filed a letter supporting Jackson's request for a different attorney, confirming that in his view there had been a break-down in communication that warranted appointment of new counsel. Following a further hearing, the court reluctantly granted Jackson's motion and directed that a new attorney be appointed.

On January 3, 2023, Attorney Jeffrey Jensen entered his appearance as Jackson's new attorney. Dkt. No. 25. At Attorney Jensen's request, the March 6, 2023 trial date was vacated and a status conference was set for February 3, 2023. Dkt. No. 26. On February 3, 2023, Attorney Jensen advised the court he had met with Jackson and his preliminary opinion was that the motion Jackson wanted him to file was without merit. He asked that the case be set for trial in late May or June. Trial was set for June 5, 2023. Dkt. No. 27.

On April 14, 2023, Attorney Jensen filed a motion to adjourn the trial on the ground that Jackson had directed him to file a motion to suppress that Attorney Jensen believed could have merit. Dkt. No. 29. On May 2, 2023, the court granted the motion to adjourn the trial based on counsel's assurance that the defendant did not want to go to trial and that the court's decision on the motion to suppress, which counsel then concluded had some merit, would allow the parties to resolve the case. Attorney Jensen was directed to file his motion by the end of the week with the

5

understanding that the Government would oppose it both as untimely and on the merits. Attorney Jensen filed his motion as directed.

Under Rule 12(c)(3) of the Federal Rules of Criminal Procedure, if a party does not meet the deadline for filing a motion to suppress, the motion is untimely. The court may nevertheless consider the motion if the party shows good cause for failing to file it in a timely manner. *Id.*; *United States v. Jackson*, 5 F.4th 676, 682 (7th Cir. 2021). Jackson has failed to show good cause here. The facts upon which the motion is based were available to Jackson before even the first motion deadline had passed. Jackson knew that his phone had been taken from him at the time of his arrest on June 30, 2019, and discovery, including the search warrant issued for the search of his phone on August 9, 2019, was provided within five days of his arraignment on March 1, 2022. Although Jackson claims he did not have immediate access to his discovery materials, his attorney did and discussed them with him. It is counsel's duty to file appropriate motions, and neither Jackson's original attorney, nor his current attorney, have offered good cause for his original attorney failing to file the motion to suppress within the time allowed. Delays were continually sought to work out a plea agreement, not to file new motions. For this reason alone, the motion is denied.

**B. Delay was not a violation of the Fourth Amendment**

Even if Jackson was able to show good cause, his motion to suppress would be denied. As noted above, Jackson contends that the evidence obtained from his phone should be suppressed because the police waited an unreasonable period of time before seeking a warrant to authorize its search. To repeat, Jackson's phone was seized from his person when he was arrested on June 30, 2019. The investigators did not apply for a warrant to search the phone until forty days thereafter on August 9, 2019. Jackson contends that such a long delay renders the search unreasonable.

6

To address Jackson's argument, it is necessary to distinguish between the possessory and privacy interests the Fourth Amendment protects. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "A seizure affects only the person's possessory interests; a search affects a person's privacy interests." *Segura v. United States*, 468 U.S. 796, 806 (1984). The distinction becomes clear when police seize articles such as packages or luggage or, in more recent times, computers or phones, that likely contain contraband or information that may be relevant to an ongoing investigation. Under the Fourth Amendment, both the seizure of the article and the subsequent search must be reasonable.

As a general matter, "seizures of personal property are 'unreasonable within the meaning of the Fourth Amendment,' without more, 'unless . . . accomplished pursuant to a judicial warrant,' issued by a neutral magistrate after finding probable cause." *Illinois v. McArthur*, 531 U.S. 326, 330 (2001) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)). But there are exceptions. "Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *Place*, 462 U.S. at 701. Even less than probable cause can justify the brief seizure of property as police attempt to confirm or dispel a reasonable suspicion that it may contain evidence of criminal conduct. *Id.* at 706 ("In sum, we conclude that when an officer's observations lead him reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of *Terry* and its progeny would permit the officer to detain the luggage briefly to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope." (citing *Terry v. Ohio*, 392 U.S. 1 (1968))).

Whether justified by probable cause, a reasonable suspicion, or some other exception, however, a warrantless seizure of such personal property is not without limits. "A seizure reasonable at its inception because based on probable cause may become unreasonable as a result of its duration." *Segura*, 468 U.S. at 812. This follows because "[t]he longer the police take to seek a warrant, the greater the infringement on the person's possessory interest will be, for the obvious reason that a longer seizure is a greater infringement on possession than a shorter one." *Burgard*, 675 F.3d at 1033. If it is reasonably possible that opening the container or downloading the information on a computer or phone may disclose no contraband or evidence of a crime and there is no other reason for police to retain custody of the item, the search should be promptly completed so that if in fact it contains no evidence, the article can be immediately returned to the owner. And of course, where police lack probable cause to seize the property and obtain a warrant for a search, only a brief detention is allowed in any event. *Place*, 462 U.S. at 709 ("The length of the detention of respondent's luggage alone [90 minutes] precludes the conclusion that the seizure was reasonable in the absence of probable cause.").

As the Seventh Circuit has noted, "[t]here is unfortunately no bright line past which a delay becomes unreasonable." *Burgard*, 675 F.3d at 1032. In other words, there is no set amount of time after which law enforcement's interference with an individual's possessory interest in such property constitutes a Fourth Amendment violation. "Instead, the Supreme Court has dictated that courts must assess the reasonableness of a seizure by weighing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Id.* at 1033 (quoting *Place*, 462 U.S. at 703); *see also McArthur*, 531 U.S. at 331 (instructing courts to "balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable").

Jackson argues that law enforcement's forty-day delay in seeking a warrant to search his phone under the circumstances of this case is clearly unreasonable. As noted above, Jackson relies upon the Seventh Circuit's decision in *United States v. Burgard* as support for his argument. In *Burgard*, police seized the defendant's phone after his friend reported he had seen sexual images of young girls on the phone and heard the defendant bragging about having sex with them. 675 F.3d at 1031. The police officer who seized the phone did not immediately apply for a search warrant but instead wrote a report about the seizure and forwarded it to a detective who was assigned to work with the FBI's Cyber Crimes Task Force. *Id.* Because of other duties that arose and the process of consulting with the Assistant United States Attorney in drafting the supporting affidavit, the application for the warrant was not submitted until six days after the phone was seized. *Id.* The defendant argued that the delay in obtaining the warrant rendered the search unreasonable. Although the Seventh Circuit affirmed the district court's decision denying the motion to suppress, Jackson believes the court's reasoning supports granting his motion in this case.

While the court in *Burgard* declined to say that the six-day delay in that case was unreasonable, it was critical of the explanations offered for even that short a delay. "It strikes us as implausible," the court noted, "that an officer with over 14 years of experience, like Krug, could not write a two-page affidavit in fewer than six days, especially when the affidavit drew largely on information that was contained in the initial report that he received from Wilson." *Id.* at 1034. Although the court concluded that the six-day delay in that case was "not so unreasonable so as to violate the Constitution," it cautioned that "[a]fter seizing an item without a warrant, an officer must make it a priority to secure a search warrant that complies with the Fourth Amendment." *Id.* at 1035. The court explained: "This will entail diligent work to present a warrant application to

9

the judicial officer at the earliest reasonable time." *Id.* Under this standard, Jackson contends, the forty-day delay in this case was clearly unreasonable.

What Jackson fails to recognize, however, is that in *Burgard*, the individual whose phone was seized was not taken into custody himself. The defendant in *Burgard* was not arrested at the time his phone was seized but voluntarily went to the police station where he was given a property receipt. *Id.* at 1031. Since he was not in custody, he retained a strong possessory interest in his phone. As the court noted, "[h]e even asserted his possessory interests over the phone by voluntarily going to the police station to obtain a property receipt, which would help him obtain the phone's return." *Id.* at 1034. Jackson, on the other hand, has been in custody and has had no right to the possession of his phone since his arrest on June 30, 2019. This fact fatally undermines Jackson's argument that *Burgard* controls here. For as *Burgard* explained, in assessing the delay, the critical question from the individual owner's side of the balance "relates to any possessory interests." *Id.* at 1033. Because he remained in custody throughout the entire forty days, Jackson had no possessory interest in his phone with which the delay in seeking a warrant interfered. *Burgard* is therefore inapposite, and under the circumstances of this case, no violation occurred.

The Ninth Circuit reached a similar conclusion in *United States v. Johnson*, 875 F.3d 1265 (9th Cir. 2017). There the court rejected a claim that a one-year delay in seeking a search warrant for the defendant's phone was unreasonable:

> We hold the delays in searching Johnson's phone were not unreasonable. Johnson had reduced privacy interests in his phone given his parolee status, and Johnson never sought return of his phone while he was in continuous custody since he was arrested on February 2, 2014. *See* [*United States v. Sullivan*, 797 F.3d 623, 633–34 (9th Cir. 2015)] (holding that a 21-day delay before the search of a parolee's laptop was reasonable). The government obtained the phone lawfully, and there is no evidence the delays were the result of dilatory tactics by the state. *See United States v. Mulder*, 889 F.2d 239, 241 (9th Cir. 1989) (finding a one-year delay reasonable, where the defendant's pills were not obtained "as the result of an unlawful search,"

10

the defendant "never made a motion for the return of the pills," and "the time lapse
was the result of the judicial appeal process rather than any dilatory tactics").

875 F.3d at 1276.

Likewise, in this case there is no dispute that the warrantless seizure of Jackson's phone when he was taken into custody on June 30, 2019, was reasonable. *See* WAYNE R. LAFAVE, 3 SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 5.5(b) (West 2020) (noting that when a person is arrested in public setting, police may take his personal property, i.e., items inside his clothing, briefcase or suitcase, packages, etc., along to the station with the arrested person). While he was held in custody for violating the conditions of his supervision, Jackson had no right to possession of his own phone. And even though the rules governing the Milwaukee County Jail where Jackson was initially held allow inmates to release their property to other individuals, Jackson made no attempt to do so. Dkt. No. 39 at 2. He filed no motion for the return of his property, as Wisconsin law explicitly authorized him to do. *See* Wis. Stat. §968.20 (Return of property frozen or seized).

The seizure of Jackson's phone was also justified because police had probable cause to believe it contained evidence of a crime. As described by the Government, that evidence consisted of Jackson's sex-trafficking communications with JV-1 and JV-2; his posting of online advertisings for sex trafficking; his phone number, personal identifiers, and billing/payment connecting him to the messages, online ads, hotels, proceeds, and nicknames saved in JV-1's contacts; his location at the time he was absconding from supervision, engaged in sex trafficking, and allegedly having oral sex with JV-1 as depicted in the video from her phone. Dkt. No. 36 at 17–18. Police are entitled to seize property they lawfully encounter that constitutes or contains evidence of a crime. *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971) (noting that "an object that comes into view during a search incident to arrest that is appropriately limited in scope under

11

existing law may be seized without a warrant"); *United States v. Cilletti*, 387 F.3d 618, 624 (7th Cir. 2004) ("[O]fficers may have probable cause to seize an ordinarily innocuous object when the context of an investigation casts that item in a suspicious light.").

Finally, because Jackson was on extended supervision, law enforcement had the right to seize and search his phone without a warrant, so long as they had at least a reasonable suspicion that it would contain evidence of a violation of his supervision. This is because, as a person released on extended supervision after December 14, 2013, Jackson was subject to Section 302.113 of the Wisconsin Statutes, more commonly referred to as Act 79. 2013 Act 79, §§ 5, 10(1). In relevant part, the statute provides:

> A person released under this section, his or her residence, and any property under his or her control may be searched by a law enforcement officer at any time during his or her period of supervision if the officer reasonably suspects that the person is committing, is about to commit, or has committed a crime or a violation of a condition of release to extended supervision.

Wis. Stat. § 302.113(7r). As a consequence, Jackson had a significantly reduced privacy interest in his phone such that a warrant wasn't even necessary for the search conducted by law enforcement. *See United States v. Wood*, 16 F.4th 529 (7th Cir. 2021); *United States v. McGill*, 8 F.4th 617, 622–23 (7th Cir. 2021).

Under these circumstances, law enforcement's delay in applying for a warrant to conduct a search of Jackson's phone, a warrant that was not even legally required, was not unreasonable. Because Jackson remained in custody, he was unable to personally possess the phone. He made no attempt to exercise possessory interest over the phone by asking for its return or requesting that it be transferred to a third party. Unlike the owner of the phone in *Burgard* who was not in custody and thus otherwise free to use his own phone, or the traveler in *Place* whose travel plans were disrupted by the seizure of his luggage, the delay in seeking a warrant did not affect Jackson. Even

12

after a warrant was obtained and the search commenced, it still took more than nine months to overcome Jackson's password protection and encryption to complete the search. Given the high probability that the search would disclose substantial evidence of serious criminal conduct, the reduced privacy interest Jackson had in the phone, and the reduced, if any, possessory interest he had in the phone during the time in question, no Fourth Amendment violation can be shown. It follows that even if his motion to suppress had been timely filed, it would have been denied.

In sum, Jackson's motion to suppress is denied. It is denied both because it was untimely filed and because it fails on the merits. Jackson has failed to show good cause for failing to timely file his motion, and in addition, law enforcement's delay in applying for a warrant to search Jackson's phone did not violate his rights under the Fourth Amendment.

**SO ORDERED** at Green Bay, Wisconsin this 9th day of June, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge